**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CITIMORTGAGE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No.  4:09CV1386-DJS |
| | ) | |
| **MILLENNIUM MORTGAGE CORP.,** | ) | |
| **d/b/a MILLENNIUM MORTGAGE** | ) | |
| **CAPITAL CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>ORDER</u>

Defendant Millennium Mortgage Corp., d/b/a Millennium Mortgage Capital Co., failed to timely answer or otherwise defend against plaintiff CitiMortgage, Inc.'s complaint filed on September 1, 2009.  On October 29, 2009, the Clerk entered default against defendant.  On December 4, 2009, plaintiff filed an appropriate motion for default judgment, supported by all necessary documentation.  Docs. #13, 14, 15, 16.  Plaintiff's certificate of service indicates the motion for default judgment was mailed via certified mail to the defendant.  Doc. #13, p. 4.  Defendant has not opposed  or otherwise responded to plaintiff's motion for default judgment.

Now before the Court is plaintiff's motion for default judgment [Doc. #13].  In the case of a default, the "allegations in the complaint, in effect, become findings of fact." <u>Brown v. Kenron Aluminum & Glass Corp.</u>, 477 F.2d 526, 531 (8th Cir. 1973).

> If the court determines that the defendant is in
> default, his liability to the plaintiff is deemed
> established and the plaintiff is not required to
> establish his right to recover. The allegations
> of the complaint except as to the amount of
> damages are taken as true. If the default is
> established, the defendant has no further
> standing to contest the merits of plaintiff's
> right to recover.

Id. (internal quotation and citation omitted). Defendant is in default. Accordingly, the facts alleged in plaintiff's complaint are accepted as true.

Having carefully reviewed the record, the Court, pursuant to Federal Rule of Civil Procedure 55(b), hereby makes the following findings of fact and conclusions of law, which constitute the grounds for granting plaintiff's motion.

**FINDINGS OF FACT**

1. This action commenced on September 1, 2009.

2. On October 5, 2009, defendant was served, via personal service on Brent Platt, Registered Agent, with summons and a copy of plaintiff's complaint, in accordance with the Federal Rules of Civil Procedure. Doc. #5, p. 2.

3. No answer or other responsive pleading was filed on behalf of defendant, and no attorney entered an appearance on its behalf.

4. On October 29, 2009, upon plaintiff's request, the Clerk of the Court entered default against defendant. Doc. #7.

5. On December 4, 2009, plaintiff filed an appropriate motion for default judgment, supported by all necessary affidavits and other documentation.  Doc. #13.

6. To date, defendant has failed to answer, respond, or enter an appearance in this action.

7. Plaintiff is a New York corporation having its principal place of business in O'Fallon, Missouri.  Doc. #1, p. 3.

8. Defendant is a California corporation having its principal place of business in Palm Desert, California.  Doc. #1, p. 3.

9. The amount in controversy in this case exceeds the sum and value of $75,000.00.  Doc. #1, p. 3.

10. The Court has subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.

11. The Court has personal jurisdiction over defendant because defendant has submitted to that jurisdiction in the parties' written agreement.  Doc. #1, p. 3; Doc. #1-2, p. 6.

12. This Court also has personal jurisdiction over defendant because defendant transacted business in the State of Missouri by, among other things, selling and delivering loans to plaintiff within this judicial district of Missouri.  Doc. #1, p. 3.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  See 28 U.S.C. § 1391.

14. Plaintiff purchases closed mortgage loans from approved lenders, including lenders known as "correspondents," across the United States under its Loan Purchasing Program ("Program"). Doc. #1, p. 1; Doc. #13-2, p. 1; Doc. #1-2.

15. Through the Program, plaintiff functions as an investor in the secondary mortgage market. Doc. #1, p. 1; Doc. #13-2, p. 1.

16. Plaintiff resells some of the loans it purchases to the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and other investors in the secondary mortgage market. Doc. #13-2, p. 1.

17. Defendant and plaintiff entered into a contract dated February 3, 2006, entitled "Correspondent Agreement Form 200" ("Form 200"), a Delegated Underwriting Addendum dated as of February 3, 2006 ("Addendum"), and an Early Purchase Program Amendment dated July 17, 2007 ("Amendment") (collectively, the "Agreement"). Doc. #1, p. 4; Doc. #13-2, p. 2; Doc. #1-2; Doc. #1-3; Doc. #1-4.

18. The Agreement sets out the terms and conditions government defendant's sale of any residential mortgage loans to plaintiff under the Program. Doc. #13-2, p. 2.

19. The Agreement provides that defendant, upon notification by plaintiff, shall cure or correct a loan sold by defendant to plaintiff which plaintiff, in its discretion, determines was underwritten and/or originated in violation of any

4

term, condition, requirement, or procedure of the Agreement or the CitiMortgage, Inc. Correspondent Manual ("CMI Manual") in effect as of the date plaintiff purchased the loan.  Doc. #1, pp. 4-6; Doc. #1-2, p. 5.

20. The Agreement provides that defendant, upon notification by plaintiff, shall cure or correct a loan sold by defendant to plaintiff which plaintiff, in its discretion, determines was underwritten and/or originated based on any materially inaccurate information or material misrepresentations made by the loan borrower or defendant, among others, or is otherwise in violation of the Agreement.  Doc. #1, pp. 4-6; Doc. #1-2, p. 5; Doc. #1-3, p. 1.

21. The Agreement provides that defendant, upon notification by plaintiff, shall cure or correct a loan sold by defendant to plaintiff which plaintiff, in its discretion, determines was subject to any Early Payment Default (as defined in the CMI Manual) or any other payment related defect (as defined in the CMI Manual).  Doc. #1, pp. 4-6; Doc. #1-2, p. 5; Doc. #1-3, p. 1.

22. The Agreement provides that defendant, upon demand by plaintiff, shall repurchase any loan which defendant is unable to correct or cure to plaintiff's full and complete satisfaction. Doc. #1, pp. 4-6; Doc. #1-2, p. 5; Doc. #1-3, p. 1.

23. The Agreement provides that defendant is obligated to indemnify plaintiff for its losses, including reasonable attorneys

fees and costs, arising from defendant's "failure to perform under the terms, conditions or obligations" of the Agreement. Doc. #1, p. 5; Doc. #1-2, p. 5; Doc. #1-3, p. 1.

24. Plaintiff purchased the following loans from defendant under the Agreement:

        1. Barnt Loan:        #XXXXX0432
        2. Cumar Loan:        #XXXXX6195
        3. Heyaime Loan:      #XXXXX7732
        4. Hunt Loan:         #XXXXX2396
        5. Peralta Loan:      #XXXXX7804
        6. Winans Loan:       #XXXXX2523

(collectively, the "Loans"). Doc. #1, pp. 6-8; Doc. #13-2, p. 4; Doc. #13-2, pp. 26-50.

25. Defendant's sale of the Loans to plaintiff was subject to the terms and conditions of the agreement. Doc. #1, p. 6; Doc. #13-2, pp. 26-50.

26. Plaintiff is currently the holder of the Loans or was the holder of the Loans at the time it demanded repurchase of the Loans and exercised its creditor's remedies on the underlying obligation. Doc. #1, pp. 4-9; Doc. #13-2, p. 4.

27. After purchasing the Barnt Loan from defendant, plaintiff had reason to believe that the Barnt Loan contained defects, including, but not limited to: (i) the loan application package misrepresented the borrower's income; (ii) the loan application package failed to provide proof that six outstanding accounts totaling $33,500 were paid off at closing as required by the applicable guidelines and closing instructions; (iii) the loan

application package misrepresented that the borrower's brother paid the monthly mortgage on a rental property when it was the borrower's husband; and (iv) the debt-to-income ratio exceeded applicable guidelines. Doc. #1, p. 7; Doc. #13-2, p. 4; Doc. #13-2, pp. 26-28.

28. After purchasing the Cumar Loan from defendant, plaintiff had reason to believe that the Cumar Loan contained defects, including, but not limited to: (i) the loan application package failed to disclose the borrower's debts and obligations by failing to disclose at least four additional mortgages upon which the borrower closed prior to closing on the subject mortgaged property; (ii) the loan application package misrepresented the borrower's income; and (iii) the debt-to-income ratio exceeded applicable guidelines. Doc. #1, p. 7; Doc. #13-2, p. 5; Doc. #13-2, pp. 29-31.

29. The Heyaime Loan is an early payment default loan. Doc. #1, p. 7; Doc. #13-2, p. 5; Doc. #13-2, pp. 32-33.

30. After purchasing the Hunt Loan from defendant, plaintiff had reason to believe that the Hunt Loan contained defects, including, but not limited to: (i) the loan violated program eligibility requirements because the borrower was employed by the originator of the loan, Crown Lending Group, at the time of closing; (ii) the loan application package failed to disclose the borrower's debts and obligations by failing to disclose an additional mortgage upon which the borrower closed prior to closing

on the subject mortgaged property; and (iii) the debt-to-income ratio exceeded applicable guidelines. Doc. #1, pp. 7-8; Doc. #13-2, p. 5; Doc. #13-2, pp. 34-35.

31. After purchasing the Peralta Loan from defendant, plaintiff had reason to believe that the Peralta Loan contained defects, including, but not limited to: (i) the loan application package failed to provide proof that five outstanding collection accounts totaling more than $11,000 were paid off at closing as required by the applicable guidelines and closing instructions; (ii) the loan application package failed to provide proof of the borrower's residency status as required by the applicable guidelines for permanent resident aliens; and (iii) the loan was an early payment default loan. Doc. #1, p. 8; Doc. #13-2, pp. 5-6; Doc. #13-2, pp. 36-37.

32. After purchasing the Winans Loan from defendant, plaintiff had reason to believe that the Winans Loan contained defects, including, but not limited to: (i) the loans application package understated finance charges by $664.45 at closing; (ii) there is no evidence in the loan application package that the borrower was provided a Good Faith Estimate; and (iii) there is no evidence in the loan application package that the borrower was provided two copies of right to cancel documents. Doc. #1, p. 8; Doc. #13-2, p. 6; Doc. #13-2, pp. 38-40.

33. Plaintiff sent letters to defendant providing notice of the Loans' defects and demanding that defendant cure the defects

or repurchase the Loans pursuant to the Agreement ("Demand Letters"). Doc. #1, pp. 7-8; Doc. #13-2, pp. 7-8; Doc. #13-2, pp. 26-40.

34. Defendant has not cured the defects in the Loans or repurchased the Loans in response to plaintiff's Demand Letters. Doc. #1, p. 8; Doc. #13-2, p. 8.

35. Plaintiff issued final letters to defendant demanding that defendant repurchase the Loans ("Repurchase Letters"). Doc. #13-2, pp. 41-50.

36. Defendant has not repurchased the Loans from plaintiff. Doc. #1, p. 8; Doc. #13-2, pp. 8-9.

37. Plaintiff performed all conditions precedent to enforcement of the Agreement, to wit: plaintiff determined in good faith that each of the Loans violated the terms of the Agreement as set forth in the above findings of fact; plaintiff sent written notices to defendant demanding that defendant cure or correct the defects in the Loans to plaintiff's full and complete satisfaction; and plaintiff sent written notices to defendant demanding that defendant repurchase the Loans after defendant failed to cure or correct the defects in the Loans to plaintiff's full and complete satisfaction. Doc. #1, p. 9; Doc. #13-2, pp. 9-10.

**CONCLUSIONS OF LAW**

38. Plaintiff's complaint asserts a claim for breach of contract against defendant, and seeks damages pursuant to

contractual repurchase and indemnification provisions in which defendant agreed to repurchase the Loans and indemnify plaintiff for its attorneys fees and court costs in prosecuting any action or claim in connection with the Loans.

39. Defendant has breached its duty to correct or cure the defects in the Loans to CMI's full and complete satisfaction or repurchase the Loans from plaintiff.

**DAMAGES**

40. Referring to the Affidavit of John Gray (Doc. #13-2, pp. 1-11) and the documentary support as to the method and manner of computation, plaintiff has incurred damages as a direct and proximate result of defendant's breaches of its duties to plaintiff in the total amount of Two Million Sixty-Two Thousand Four Hundred Forty-Two and 26/100 Dollars ($2,062,442.26), exclusive of attorneys fees and costs.

41. To date, Eight Thousand Nine Hundred Twenty-Two and 50/100 Dollars ($8,922.50) in attorneys fees and court costs have been expended by plaintiff in connection with its claims in the complaint. Doc. #13-3.

For the above stated reasons,

**IT IS HEREBY ORDERED** that plaintiff's motion for default

judgment [Doc. #13] is granted.   A separate judgment shall be

entered this day.


     Dated this   3rd   day of February, 2010.



                              /s/Donald J. Stohr
                              UNITED STATES DISTRICT JUDGE